IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| TRACY DUNLAP, | ) | |
| | ) | |
| | ) | CA No. 15-35395 |
| Plaintiff-Appellees, | ) | |
| | ) | |
| v. | ) | U.S.D.C. No. 3:12-cv-01635-SI |
| | ) | U.S. District Court for Oregon, |
| LIBERTY NATURAL PRODUCTS, | ) | Portland |
| INC., | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

———————————————

DEFENDANT-APPELLANT'S OPENING BRIEF

———————————————

On Appeal from the United States District Court
For the District of Oregon
Before the Honorable Michael H. Simon

Ruth C. Rocker, OSB No. 944225
Janet M. Schroer, OSB No. 813645
HART WAGNER LLP
1000 SW Broadway, 20th Floor
Portland, Oregon 97205
Telephone (503) 222-4499
jms@hartwagner.com
rcr@hartwagner.com

Of Attorneys for Defendant-Appellant

**SEPTEMBER 2015**

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Appellant Liberty Natural Products, Inc. ("Liberty") states that there is no parent corporation and no publicly held corporation that owns 10% or more of Liberty Natural Products, Inc.

## TABLE OF CONTENTS

Jurisdictional Statement ...................................................................1

Issues Presented for Review .............................................................1

Statement of the Case.......................................................................2

1. Contextual Background..............................................................2

2. Plaintiff's Elusive Disability Discrimination Theories.......................4

3. Broader Importance of this Appeal ..............................................8

Statement of Facts............................................................................9

1. Liberty's Shipping Clerk Position ...............................................9

2. Plaintiff's Work Injury and Physical Limitations During her Open WC Claim..............................................................................12

3. The Last Medical Update Plaintiff Provided Liberty. .....................16

4. Subsequent Physical Evaluation Plaintiff Did Not Provide Liberty................16

5. WC Claim Closed Declaring Plaintiff Permanently Disabled..........17

6. Plaintiff was Silent about Her Disability and Made No Accommodation Request.................................................................................17

7. Liberty Terminates Plaintiff's Employment ..................................18

8. The Trial Court Proceedings......................................................19

SUMMARY OF ARGUMENT ..........................................................21

ARGUMENT ..................................................................................24

I. The District Court Erred by Denying Liberty's Renewed JMOL Motion .......24

A.    Preservation and Standard of Review ........................................................24

B.    The District Court Correctly Stated The Applicable Legal Principles But Made Erroneous Findings. ..............................................................25

1.    The Law Places the Burden on Plaintiff to Prove the Existence of a Reasonable Accommodation ..................................................25

2.    The Evidence Failed to Satisfy Plaintiff's Burden of Proof .....................29

3.    The District Court's Denial of JMOL was Based on Erroneous Findings.32

II.   The District Court's "Disability Discrimination (Claim One)" Instruction Was Legally Incorrect, Confusing and Prejudicial to Liberty .....................34

A.    Standard of Review and Preservation ........................................................35

B.    The Flawed Jury Instruction and Resulting Jury Verdict. .........................37

C.    Disparate Treatment and Failure to Accommodate are Distinct Theories with Unique Elements Requiring Separate Instructions ...........................40

1.    The FAC is a Freestanding Claim with Distinct Elements. ....................42

2.    The Distinct Analysis Required by the Two Claims Got Lost in the Single Disability Discrimination Instruction ...........................................48

D.    The District Court's Modified "Triggering-Duty" Instruction Also Misstated the Law on a Decisive Issue in the Case .....................................50

1.    Legal Authority Supports Liberty's Requested Instruction ....................51

2.    The Facts Required a Proper Instruction on Plaintiff's Burden to Prove that the Duty to Accommodate was Triggered ........................................55

3.    The District Court Proceeded under the False Premise that WC "Accommodation" Triggers the ADA Duty to Provide Disability Accommodation ........................................................................................56

iii

4.    The Instruction Unfairly Prejudiced the Jury's Verdict in Plaintiff's
Favor.........................................................................................................59

CONCLUSION ..........................................................................................................60

<u>TABLE OF AUTHORITIES</u>

**CASES**

*Allen v. Pac. Bell,*
348 F.3d 113 (9th Cir.2003) ........................................................ 43, 48

*Barnett v. U.S. Air, Inc.*,
228 F.3d 1105, 1112 (9th Cir.2000) (en banc), *vacated on other grounds*, *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 122 S. Ct. 1516 (2002), 228 F.3d 1105 (9th Cir.2000) ................................................................ *passim*

*Bates v. United Parcel Svc., Inc.*,
511 F.3d 974 (9th Cir.2007) ...........................................................26

*Benz v. West Linn Paper Co.,*
803 F.Supp.2d 1231 (D.Or.2011)......................................................52

*Borkowski v. Valley Central School District*,
63 F.3d 131 (2nd Cir.1995)........................................................ 26, 31

*Brown v. Lucky Stores, Inc.*,
246 F.3d 1182 (9th Cir.2001) ................................................ 47, 51, 52

*Brumfield v. City of Chicago*,
735 F.3d 619 (7th Cir.2013) ...........................................................57

*Buckingham v. United States*,
998 F.2d 735 (9th Cir.1993) ...................................................... 27, 28

*Butlemeyer v. Fort Wayne Cmty. Sch.*,
100 F.3d 1281 (7th Cir.1996) ..........................................................42

*Calero-Cerezo v. U.S. Dept. of Justice*,
355 F.3d 6 (1st Cir.2004) ...............................................................53

*Colwell v. Rite Aid Corp.*,
602 F.3d 495 (3rd Cir.2010) ...........................................................53

v

*Costa v. Desert Palace, Inc.*,
299 F.3d 838 (9th Cir.2002) (en banc), *aff'd*, 539 U.S. 90,
123 S. Ct. (2003)..............................................................................45, 46

*Cripe v. City of San Jose*,
261 F.3d 877 (9th Cir.2001) .............................................................26

*Dark v. Curry County*,
451 F.3d 1078 (9th Cir.2006), *cert. den*. 549 U.S. 1205 (2007)....................27, 28

*Davis v. Team Elec. Co.*,
520 F.3d 1080 (9th Cir.2008) ...........................................................41

*Dunlap v. Ass'n of Bay Area Gov'ts*,
996 F.Supp. 962 (N.D.Cal.1998)...................................................41, 42

*E.E.O.C. v. C.R. England, Inc.*,
644 F.3d 1028 (10th Cir.2011) ..........................................................52

*EEOC v. AutoZone, Inc.*,
630 F.3d 635 (7th Cir.2010) ..............................................................44

*Fallar v. Compuware Corp.*,
202 F.Supp.2d 1067 (D.Ariz.2002)...............................28, 40, 43, 47, 48

*Ferry v. Roosevelt Bank*,
883 F. Supp. 435 (E.D.Mo.1995) .......................................................58

*Fortyune v. Am. Multi-Cinema, Inc.*,
364 F.3d 1075 (9th Cir.2004) ............................................................46

*Foster v.  City of Oakland*,
649 F.Supp.2d 1008 (N.D. Ca.2009)..............................................43, 47

*Gambini v. Total Renal Care, Inc.*,
486 F.3d 1087 (9th Cir.2007) ............................................................37

*Gilbert v. Frank*,
949 F.2d 637 (2nd Cir.1991)........................................................26, 32

*Harper v. City of Los Angeles*,
533 F.3d 1010 (9th Cir.2008) ..............................................................25

*Hazen Paper Co. v. Biggins*,
507 U.S. 604, 113 S. Ct. 1701 (1993) ..................................................41

*Henrietta D. v. Bloomberg*,
331 F.3d 261 (2nd Cir.2003).................................................................44

*Honstein v. Metro Ambulance Service, Inc.*,
193 Or App 457, 90 P3d 1030 (2004) ..................................................27

*Humphrey v. Mem'l Hospital Ass'n* ,
239 F.3d 1128 (9th Cir. 2001), *cert. den.*, 535 U.S. 1011,
122 S. Ct. 1592 (2002).........................................................................28

*Hunter v. City of Sacramento*,
652 F.3d 1225(9th Cir.2011) ............................................. 36, 37, 50, 59

*Johnson v. Evangelical Lutheran Good Samaritan Society*,
2005 WL 230834 (D.Or. Aug. 2005) ....................................................43

*Kees v. Wallenstein*,
161 F.3d 1196 (9th Cir.1998) ..............................................................26

*Kinyon v. Fred Meyer Stores, Inc.*,
2004 WL 2303595 (D.Or. October 12, 2004) .......................................52

*Love v. Prime,*
259 Or. App. 1, 312 P3d 562 (2013) ............................................. 25, 26

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792, 93 S. Ct. 1817 (1973); ..................................................41

*McGary v. City of Portland*,
386 F.3d 1259 (9th Cir.2004) ...................................................... *passim*

*McMackins v. Elk Grove Unified School Dist.,*
21 F.Supp.2d 1201 (E.D. Cal.1998) .............................................. 28, 31

*Mole v. Buckhorn Rubber Products, Inc.*
165 F.3d 1212 (1999) ................................................................. 57, 58

*Moore v. Mariott Intern, Inc.,*
2014 WL 5581046 (D.Ariz. Oct. 31, 2014) ................................. 42,43

*Mustafa v. Clark County Sch. Dist.,*
157 F.3d 1169 (9th Cir.1998) .................................................... 27, 28, 47

*Nunes v. Wal-Mart Stores, Inc.,*
164 F.3d 1243 (9th Cir.1999) .................................................... 28, 40

*Pavao v. Pagay,*
307 F.3d 915 (9th Cir.2002) ....................................................... 25

*Peebles v. Potter,*
354 F.3d 761 (8th Cir. 2004) ..................................................... 44, 45, 46

*Raytheon Co. v. Hernandez,*
540 U.S. 44, 124 S.Ct.513 (2003) ............................................... 40, 41, 45

*Reeves v. Sanderson Plumbing Prods., Inc.,*
530 U.S. 133, 120 S.Ct. 2097 (2000) .......................................... 25, 45

*Rehrs v. Iams Co.,*
486 F.3d 353 (8th Cir. 2007) ..................................................... 31

*Samper v. Providence St. Vincent Med. Ctr.,*
675 F.3d 1233 (9th Cir.2012) .................................................... 27, 43, 48

*Schmidt v. Safeway, Inc.,*
864 F.Supp. 991 (D.Or.1994) ..................................................... 52

*Spitzer v. The Good Guys, Inc.,*
80 Cal.App.4[th] 1376 (2000) ...................................................... 51

*Swinton v. Potomac Corp.,*
270 F.3d 794 (9th Cir.2001) ...................................................... 37

*Taylor v. Principal Fin. Grp. Inc.*,
   93 F.3d 155 (5th Cir.1996) ................................................................ 51, 53

*Wall Data Inc. v. Los Angeles County Sheriff's Dep't.*,
   447 F.3d 769 (9th Cir.2006) ..................................................................36

*Wallace v. Heartland Community College,*
   2014 U.S. Dist. WL 2809084 *5 (Peoria Division 2014) ...................................57

*Washburn v. Columbia Forest Products, Inc.*,
   340 Or. 469, 134 P.3d 161 (2006) ...........................................................19

*Wells v. Chrysler Group LLC,*
   559 F.App'x 512 (6th Cir.2014) ..............................................................41

*White v. Ford Motor Co.*,
   312 F.3d 998 (9th Cir.2002) ...................................................................36

*White v. York Intern. Corp.,*
   45 F.3d 357 (10th Cir.1995) ................................................... 26, 28, 32

*Withers v. Johnson*,
   763 F.3d 998 (8th Cir.2014) ..................................................................44

*Woodman v. Runyon,*
   132 F.3d 1330 (10th Cir.1997) ........................................................ 52, 53

*Zivkovic v. Southern Cal. Edison Co.*,
   302 F.3d 1090 (9th Cir. 2002) ..............................................................54

*Zukle v. Regents of University of California,*
   166 F.3d 1041 (9th Cir.1999) .......................................................... 27, 47

## RULES AND STATUTES

29 C.F.R. § 1630 ........................................................................................27

29 C.F.R. § 1630.2 ................................................................................ 26, 31

29 C.F.R. § 1630.9, App. (1999) ..........................................................51

29 C.F.R. § Pt. 1630, App. ...................................................................9

18 U.S.C. § 1331 ..................................................................................1

28 U.S.C. § 1291 ..................................................................................1

29 U.S.C. § 794 ..................................................................................28

42 U.S.C. § 12112 ....................................................................... 1, 25, 41

Fed. R. App. P. 4(a)(4)(i), (v) ............................................................1

O.A.R. 839-006-0206(4) ....................................................................52

Or. Rev. Stat. § 659A.040 ..................................................................19

Or. Rev. Stat. § 659A.043 ..................................................................19

Or. Rev. Stat. § 659A.046 ..................................................................19

Or. Rev. Stat. § 659A.115 ..................................................................26

Or. Rev. Stat. § 659A.122 ..................................................................19

Or. Rev. Stat. § 659A.139 ..................................................................19

Or. Rev. Stat. § 659A.199 ..................................................................19

## OTHER

Brennan, Megan I. (2013) "Need I Prove More: Why an Adverse Employment
    Action Prong Has No Place in a Failure to Accommodate Disability Claim,"
    *Hamline Law Review*: Vol. 36, Iss. 3, Art. 7 ......................................................42

## Jurisdictional Statement

The district court had subject matter jurisdiction under 18 U.S.C. § 1331, because Plaintiff raised claims under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112, *et.seq.* This Court has jurisdiction pursuant to 28 U.S.C. § 1291. This appeal is from a final judgment entered on November 20, 2014 (ER 27-29), and the district court's April 20, 2015 order denying Liberty Natural Products, Inc.'s (Liberty) motion for judgment as a matter of law (JMOL) or, in the alternative, a new trial (ER 1-26). Appellant timely filed the notice of appeal on May 15, 2015, pursuant to Fed. R. App. P. 4(a)(4)(i), (v). ER 42.

## Issues Presented for Review

1.      Whether the district court erred by denying Liberty's renewed motion for JMOL based on Plaintiff's failure to present sufficient evidence to satisfy her burden to prove that an effective accommodation existed that would have enabled her to perform the essential functions of Liberty's shipping clerk position.

2.      Whether the district court committed instructional error by conflating the elements of two distinct disability discrimination claims, rejecting both parties' request to separate Plaintiff's disparate treatment claim (DTC) from her failure to accommodate claim (FAC), thereby confusing the issues presented to the jury and unfairly prejudicing the verdict against Liberty.

3.      Whether the district court erred by failing to give Liberty's requested Ninth Circuit Model Jury Instruction (MJI) No. 12.8 ADA – Reasonable Accommodation, which accurately describes Plaintiff's burden to prove that she triggered an affirmative duty by Liberty to accommodate her disability ("triggering-duty" rule) and, instead, instructing the jury that Liberty's duty to accommodate was triggered merely if "Defendant became aware that Plaintiff needed an accommodation" when it was undisputed that Plaintiff did not request disability accommodation and her disability did not prevent her from doing so.

## Statement of the Case

**1.      Contextual Background.**

Liberty is a small business that grows, imports and distributes wholesale botanical ingredients and natural products nationally and internationally.  The four employees in Liberty's busy shipping department share the tasks required to package and ship customer orders properly and promptly.  The shipping clerk position is a physically demanding job that requires each team member to maneuver, lift and move product and boxes, including heavy items weighing over 30 pounds.

After six years of working as a shipping clerk for Liberty, Plaintiff sustained a repetitive motion injury in both elbows caused by performing the continuous, physically demanding tasks required of her job.  In the fall of 2010, Plaintiff filed a workers' compensation (WC) claim and for 18 months Liberty provided her "light-

duty" work to assist her recovery. For approximately a year, Plaintiff provided Liberty with her doctor's work release restrictions which fluctuated somewhat, but consistently ordered Plaintiff unable to perform the heavy lifting required of a "regular-duty" shipping clerk.

When Plaintiff's WC claim was coming to closure and she learned that she was permanently disabled and unable to return to her regular duty job, Plaintiff stopped providing Liberty with her medical releases. Plaintiff spoke to no one at Liberty about her physical limitations, and she never communicated a need or desire for permanent disability accommodation.

Liberty learned about Plaintiff's disability by direct receipt of the WC Notice of Closure, not by Plaintiff. Based on the Notice of Closure and Liberty's understanding of Plaintiff's work restrictions at the time, Liberty decided to terminate Plaintiff's employment because her disability rendered her unable to perform the physical tasks required of her job.

Without making a request for disability accommodation, Plaintiff initiated legal action against Liberty. Despite BOLI and EEOC findings of no basis to proceed, Plaintiff sued Liberty asserting six claims of employment law violations. Following a summary judgment motion and four days of trial, all of Plaintiff's claims, except for her FAC, were defeated.

**2.     Plaintiff's Elusive Disability Discrimination Theories**.

With the benefit of earlier summary judgment briefing, the district court understood that "Plaintiff brings her state and federal disability claims under a "failure to accommodate" theory.  ER 189.  Plaintiff's trial memorandum, however, explained that her disability discrimination case involved two distinct and *alternative* claims of disparate treatment and failure to accommodate.[1] Dkt. 58 at 4-10.

The premise of Plaintiff's DTC was that she had *no need* for accommodation and Liberty committed unlawful discrimination by terminating her employment on the basis of her disability.  Specifically, Plaintiff argued that she was similarly situated to other non-disabled employees because she could perform the essential functions of her job without accommodation by using "the tools/equipment already on site."  ER 58.  In support of her DTC, Plaintiff argued that Liberty's stated reason for terminating her employment —which was that her disability rendered her unable to perform the physical tasks required of the shipping clerk position— "admitted" that the decision was made on the basis of her disability, thereby satisfying the causation element of her DTC.  Dkt. 58 at 6-7; ER 57, n.1.

The premise of Plaintiff's FAC was that Plaintiff *needed* accommodation and Liberty committed unlawful discrimination by failing to fulfill its affirmative

---

[1]  Plaintiff's trial memorandum first identified her DTC as "Actual Disability under the ADA".  Dkt. 58 at 4.  She later identified it as a DTC.  ER 57.

duty to provide some reasonable accommodation that would have enabled her to perform the essential functions of her job. ER 57-58. Plaintiff's two claims presented mutually exclusive theories of liability that could not co-exist.[2]

At the first pretrial conference, the court stated: "I think there is no contention by plaintiff that she can't perform the essential function of the job without a reasonable accommodation. So what this lawsuit is about [is] she * * * says she is entitled to, under the law, to [sic] a reasonable accommodation, and with a reasonable accommodation, she then can perform the essential function of

---

[2] Plaintiff's later objection to the court's jury instruction provided the following example of how she believed the difference in her two theories *should* play out in this case. ER 58. Under the DTC, plaintiff explained:

> "Ms. Dunlap is actually disabled (yes, * * *). Ms. Dunlap could perform the essential functions of her position without accommodation (with the tools/equipment already on site). If Ms. Dunlap proves this and also proves that a motivating factor in her termination was her disability, then she prevails on her actual disability disparate treatment claim."

*Id*. Under the FAC, plaintiff explained:

> "In the alternative, if the jury agrees that Ms. Dunlap is disabled and needed something beyond the available tools/equipment, and also agrees that providing 'something beyond' was possible, then she prevails *unless* defendant proves the 'something beyond' was an undue hardship."

*Id.* (emphasis in original). Following this explanation, plaintiff informed the court that "[t]he current instructions and verdict form treat all of Ms. Dunlap's claims as disparate treatment claims. * * * *This is not correct for the failure to accommodate claim*." *Id*. (emphasis added).

the job."  PTC1 at 27.[3]  Plaintiff's counsel responded that he was "not prepared to concede that they have to accommodate here * * *."  *Id.*

At the second pretrial conference, Judge Simon explained that an issue "really nagging" at him was whether the elements of a DTC and a FAC differed under Ninth Circuit law.  PTC2 at 3, 7.  Plaintiff's counsel explained that, "there is a big difference between a [disparate treatment] disability discrimination claim and a failure-to-accommodate claim."  *Id.* at 8.  "I don't have to prove they didn't like her because of her disability on a failure to accommodate claim.  I have to prove they just didn't accommodate."  *Id.* at 17.  Plaintiff's counsel stated, "I know those standards get confused a lot.  The [disparate treatment] and failure to accommodate claims get clumped together."  *Id.* at 20.

The court's jury instructions and verdict form were drafted and finalized based on Plaintiff's assertion of both claims.  However, over the parties' objections, the court combined the two claims into one "disability discrimination" claim that folded Plaintiff's FAC into the elements of Plaintiff's DTC and omitted Liberty's requested Ninth Circuit MJI No. 12.8 correctly stating the ADA "triggering-duty" rule.

---

[3]  Citations to "PTC1" and "PTC2" refer to the transcript of the first and second Pretrial Conferences.

At trial, Plaintiff's case focused almost exclusively on her FAC. Her counsel introduced the case by telling the jury that it "boil[ed] down to" this: Liberty terminated Plaintiff's employment without making an effort to accommodate her disability and Liberty was at fault for failing to initiate the ADA-required interactive process prior to her termination. Tr. 46-47. Plaintiff's closing told the same story, emphasizing her FAC and making no DTC arguments. Tr. 728-752.

The verdict form combined Plaintiff's DTC and FAC, mirroring the court's (one) disability discrimination claim instruction. ER 30-33. In two parts, the jury was asked to decide if Plaintiff had a disability (actual, record of, or regarded as), whether she was able to perform the essential functions of her job with or without accommodation, whether Liberty proved that any proposed accommodation would impose an "undue hardship," and whether Plaintiff's disability was a motivating factor in Liberty's decision to terminate her employment. *Id.*

The jury's verdict found that Plaintiff could not perform the essential functions of the shipping clerk job without accommodation; that Plaintiff could perform the essential functions of her job with reasonable accommodation; that Defendant did not prove reasonable accommodation would impose undue hardship; and that Liberty's termination decision was made on the basis of Plaintiff's disability. ER 30-33.

### 3.     Broader Importance of this Appeal.

This appeal exposes several areas of disability discrimination law that are ripe for clarification in this Circuit.  First, as the district court expressed in this case, there is need for instruction about what the necessary elements are to prove a DTC and a FAC.  Tr. 131-32.  Indeed, the court's admitted confusion in this regard led to the instructional error that prejudiced the jury's verdict.

Second, it is unclear whether the "triggering-duty" rule as stated in Ninth Circuit UJI No. 12.8 remains an accurate statement of the law.  Although it is clear that an accommodation request need not be formal nor employ any magic words, the district court's rejection of the instruction in this case calls into doubt whether a disability accommodation request is ever required and suggests that the "triggering-duty" rule has been swallowed up by judicially-created exceptions.

If this Circuit has decided to abandon the "triggering-duty" rule as presented in Ninth Circuit UJI No. 12.8 and, instead, adopt the rule as stated in the district court's instruction, then employers, both private and public, need to know of this significant change in the law which shifts full responsibility onto the employer to assess the employee's need and desire for disability accommodation even in the absence of any communication by the employee expressing a desire for disability assistance.

A third issue, related to the "triggering-duty" rule, is clarification of the legally significant difference between an employer's obligations to "accommodate" an

injured employee under state WC statutory systems, and an employer's duties under the ADA to accommodate an employee's disability. It is well recognized that WC systems and the ADA "have fundamentally different purposes * **." 29 C.F.R. § Pt. 1630, App. However, in this case, the district court relied on the flawed premise that an employer's ADA duty to accommodate a disability is triggered when an employer has provided WC light-duty "accommodation" to an injured employee and learns, not from the employee but from the WC Notice of Closure, that the injury has become a permanently disabling condition. ER 16. This faulty premise led to the court's erroneous modification of MJI No. 12.8 which prevented the application of the "triggering-duty" rule in this case despite that the uncontroverted evidence demonstrated that Plaintiff never requested disability accommodation nor expressed a desire to explore options for permanent disability assistance.

### Statement of Facts

The facts set forth below provide an overview of the evidence at trial. Additional relevant facts are incorporated into Liberty's arguments on the merits.

### 1.     Liberty's Shipping Clerk Position.

The primary tasks of a Liberty shipping clerk have always included: (1) auditing items to be shipped ("auditing process"); (2) wrapping and boxing the items to be shipped ("boxing process"); and (3) weighing the shipment box and preparing the shipping invoice ("shipping process"). Tr. 68-70. Product orders

vary in sizes and weights and are processed randomly depending upon the shipping method and the product mix on any given day. Tr. 178, 180, 216. Liberty's shipping clerks work as a team to maneuver, lift, carry and move all the product through the shipping process. *Id.*

The auditing process begins each morning when product is brought from the production department in container bins that are stacked by order number on rolling racks. Tr. 112-13, 173-74, 305-06. Orders are written on "picking slips" with invoice numbers that correspond to the collected product. Tr. 113, 279. One order might consist of multiple bins containing caps, bottles, packaging materials, containers and the product itself. Tr. 183. These bins are lifted from the rack and carried to a worktable, sometimes requiring multiple trips. Tr. 114, 183, 185.

After placing the product bins on a worktable, the shipping employee lifts product from inside the bins to verify the accuracy of the products and the amounts with the picking-slip order. Tr. 110, 114. Bottled product is lifted into plastic bags, which are twisted at the top and sealed with a kerchunker, a special taping device. Tr. 150, 177. After the order is audited, the container of product is carried to an audit conveyor and manually pushed down the conveyor. Tr. 117, 119.

The boxing process begins by lifting containers of audited product off the conveyor and carrying them to another workstation. Tr. 119. Product is again lifted out of the container to check caps for tightness (including glass bottles,

gallon jugs and white containers) and to secure bubble wrap around the product which includes tearing and taping the wrap. Tr. 138. Shipment boxes of varying sizes are constructed and, after packing material and product is placed into the box, it is sealed shut using a tape gun and manually pushed along a conveyor table to await the shipping process. Tr. 139, 149, 152.

The shipping process requires lifting the shipping box off the conveyor and carrying it to a floor scale to be weighed. Tr. 139. The box is then lifted off the floor scale and taken to a workstation or to a cart while the shipping document is prepared and affixed to the box. Tr. 141, 153, 201. The shipping process has always included lifting and stacking boxes, most of which weigh two to 35 pounds but approximately 15-20 percent weigh over 30 pounds. Tr. 180, 307. Shipments of product by "common carrier" are a different class of orders contained in buckets or cans, rather than boxes, weighing between 25-50 pounds that are lifted onto pallets to await a scheduled pick up. Tr. 186.

Adjustable carts, rolling conveyors and scissor lifts have always been available in the shipping department to assist with moving product and boxes during all phases of the shipping process. Tr. 136, 138-39, 141, 460. This equipment does not eliminate the regular lifting of items that weigh up to ten pounds and the intermittent heavy lifting of items that weigh 30 pounds and more. Tr. 198, 216, 270, 282. Employees were not discouraged from using the assistive

equipment, except that Shane Reaney (Reaney), Liberty's general manager, encouraged Plaintiff not to use the shipping department carts at times during her WC "light-duty" assignment when her medical releases indicated no pushing or pulling. Tr. 141, 352-53.

At least since 2007, the job posting for a shipping clerk has identified lifting requirements with an expected strength of 40 to 50 pounds. Tr. 207; ER 117-120. Liberty's shipping clerks routinely maneuver, lift and move product including five-gallon distilled water buckets weighing 29 pounds (Tr. 175), fixed oil or butter containers weighing approximately 40 pounds (Tr. 175-76), essential oils contained in larger bins weighing 25 pounds (Tr. 176), oils contained in one and two-and-a-half gallon containers weighing between 5.7 and 10.7 pounds (Tr. 177), buckets of glycerin weighing up to 57 pounds (Tr. 186), and bagged herbs weighing from one once to 55 pounds (Tr. 184). The heaviest individual product Liberty typically ships weighs roughly 66 pounds. Tr. 203.

## 2.      Plaintiff's Work Injury and Physical Limitations During her Open WC Claim.

Plaintiff began as a Liberty shipping clerk in 2006. Tr. 706. In July 2010, Plaintiff notified Liberty that her right elbow hurt from performing the repetitive tasks of her job. Tr. 517-18. Liberty promptly made adjustments to Plaintiff's work station and chair. Tr. 520. Shortly thereafter, Plaintiff began experiencing left elbow pain. Tr. 521.

In October 2010, plaintiff saw Dr. Reichle for bilateral elbow pain. Tr. 706. Plaintiff reported to Dr. Reichle that the pain began "with no significant event other than repetitively packaging and lifting boxes, taping product, and handling items weighing between 10 and 60 pounds for 8 hours a day." ER 121-22; Tr. 559. Dr. Reichle ordered modified work, restricting Plaintiff to no lifting over five pounds, no pushing and/or pulling more than five pounds of force, and no forceful repetitive use of both arms and hands. ER 109; Tr. 523, 561-62. Plaintiff's initial medical release anticipated maximum medical improvement by December 20, 2010. ER-109.

On October 20, 2010, Plaintiff initiated a WC claim and reported that her bilateral elbow injury developed due to the repetitive tasks of her job such as "tape gun use, lifting items up to 60 pounds, moving product, boxes, buckets, gallons, etc." ER 84; Tr. 706. Plaintiff reported that lifting and taping were among the required tasks for her job. Tr. 575.

Plaintiff gave Liberty a copy of her medical work release. Tr. 523; ER 109. Jim Dierking (Dierking), Liberty's owner and president, directed Reaney to modify Plaintiff's work duties so as not to exceed her medically-indicated restrictions. Tr. 419. Plaintiff met with Reaney and other shipping department employees, Hal Schachel (Schachel) and Beth New (New) to discuss her injury. Tr. 524. Consistent with Liberty's policy to support their injured employees' recovery by

approaching medical work release restrictions conservatively, Liberty provided Plaintiff with "light duty" work to minimize her physical demands and facilitate the healing process.  Tr. 211, 314, 346, 419.  Plaintiff understood that Reaney asked her to view her work restrictions conservatively so that she would "get better faster" (Tr. 527) because Reaney was trying to help her.  Tr. 570.  Liberty anticipated that Plaintiff would recover and eventually return to regular-duty work. Tr. 420.

On December 17, 2010, Liberty's workers' compensation insurer, Chartis, accepted Plaintiff's WC claim for bilateral lateral epicondylitis.  ER 86.  Plaintiff visited medical providers regularly for over a year.  ER 93-109; Tr. 529, 575. During that year, Plaintiff provided Liberty with monthly medical work releases identifying her physical restrictions.  Tr. 529.  Plaintiff understood that it was her obligation to keep Liberty informed of the progress of her WC injury, including changes to her physical limitations and work restrictions.  Tr. 558-59.  Liberty relied on Plaintiff to provide updated medical information to stay informed of her physical restrictions.  Tr. 318.

Liberty permitted Plaintiff to determine what tasks she was able to perform within her restrictions and relied on Plaintiff's own assessment of what she could do without discomfort.  Tr. 221, 314.  Plaintiff testified that during her "light duty" assignment she could not complete the auditing, boxing and shipping

processes for large and heavy orders. Tr. 562, 592-95. The shipping department implemented a new system of reviewing picking slips in the morning to identify and separate orders weighing less than ten pounds to allow Plaintiff to work within her restrictions and relieve her of heavy lifting and moving. Tr. 181. Plaintiff knew that her "light duty" assignment required co-workers to take on the extra work of lifting, pushing and pulling objects that were over Plaintiff's restrictions. Tr. 525.

With the onset of Plaintiff's taping restrictions, Plaintiff stopped assisting with the boxing process altogether. Tr. 197. When her pushing and pulling restrictions were invoked, Plaintiff did not use the roller carts or push or pull even empty audit racks. Tr. 166. She no longer assisted with bringing the "pounder" audit carts to the shipping department in the morning. Tr. 175. Plaintiff was limited to processing orders, preparing picking slips for the following day and settling credit card transactions. Tr. 562. Plaintiff could not lift and load product into shipping boxes that weighed ten pounds or more. Tr. 197. Plaintiff no longer processed the common-carrier orders that required lifting buckets onto pallets. Tr. 186. Plaintiff did not check product caps for tightness. Tr. 188. She stopped constructing shipping boxes. *Id*. Plaintiff no longer stocked the inventory of packaging materials. Tr. 192. Plaintiff could peal and stick the shipping documents to the box but she could not complete the task of affixing the

documents by using a tape gun. Tr. 201. From July 2011 until her termination from employment in April, 2012, plaintiff did not tape, make or seal boxes, or lift or carry boxes over 10 pounds. Tr. 594-95.

During Plaintiff's WC claim, she never requested changes to her work requirements or her work space. Tr. 194. She never expressed any complaints or suggestions, orally or written, about changes that might make her job less physically demanding. *Id*.

### 3. The Last Medical Update Plaintiff Provided Liberty.

The last medical work release Plaintiff provided to Liberty, dated December 6, 2011, indicated "No change from previous release." Tr. 420; ER 93. In fact, there had been no changes in Plaintiff's work restrictions since September, 2011. Tr. 595; ER 94-96. The September 2, 2011 release ordered Plaintiff to remain on "light duty" and restricted any lifting over 10 pounds, restricted frequent lifting up to 10 pounds, permitted occasional grasping and pushing/pulling, and permitted fine manipulation without restriction. Tr. 594-95; ER 96. These were the restrictions known to Liberty at the time the termination decision was made. Tr. 340, 420.

### 4. Subsequent Physical Evaluation Plaintiff Did Not Provide Liberty.

Plaintiff underwent a Physical Capacities Evaluation (PCE) on January 6, 2012 that, unbeknownst to Liberty, modified Plaintiff's work restrictions to

occasionally lifting up to 25 pounds and restricted repetitive grasping.  ER 123-27.

Plaintiff did not provide her PCE results to Liberty, nor did she inform Liberty that

her work restrictions or physical limitations had changed.  Tr. 489-91, 537-38.

Plaintiff understood that the PCE determined that she was unable to perform the

regular-duty shipping clerk job due to her continued limited ability to lift or carry

the required weight.  ER 124; Tr. 603.  Liberty did not receive the PCE report from

any source prior to its termination decision.  Tr. 489-90.

**5.     WC Claim Closed Declaring Plaintiff Permanently Disabled.**

On March 8, 2012, Chartis issued a Notice of Closure, which both Plaintiff

and Liberty received within a few days.  Tr. 707; ER 87-92.  The Notice closed

Plaintiff's WC claim with a determination that her bilateral lateral epicondylitis was

permanent and disabling and it did not release her to perform the regular work of a

shipping clerk.  *Id.*  Plaintiff was awarded permanent partial disability.  ER 88.

**6.     Plaintiff was Silent about Her Disability and Made No Accommodation
        Request.**

Plaintiff carefully read the materials included with the Notice of Closure,

and understood that she was not authorized to return to the regular work duties of

her job.  Tr. 605; ER 88.  Despite that she was worried about losing her job,

Plaintiff did not discuss the Notice of Closure with anyone at Liberty.  Tr. 507,

538, 608-09; ER 129.  Other than the initial adjustment to her workstation and

chair in 2010, Plaintiff did not request any further workplace modifications either

during or after her WC claim.  Tr. 194, 315-16, 358.  While employed, Plaintiff

never asked Liberty for disability accommodation, nor did she communicate that

she wanted to explore ways to continue to work as a shipping clerk despite her

disability.  Tr. 507, 615; ER 176-77.

### 7.    Liberty Terminates Plaintiff's Employment.

On April 26, 2012, Dierking decided to terminate Plaintiff's employment

based on his review of the last known medical work restrictions that Plaintiff

provided to Liberty, his consideration of the Notice of Closure determination that

Plaintiff could not return to her regular work duties, and his consideration of

Plaintiff's restricted physical abilities throughout her "light duty" assignment.  Tr.

420, 464.  Based on his 20 to 30 years of experience in the industry, Dierking

determined that Plaintiff's restrictions and physical limitations prohibited her from

performing the essential functions of the shipping clerk job.  Tr. 483.

Significantly, Plaintiff testified at trial in July 2014 that her elbows continued to

hurt when she lifts, grabs or pulls over 10 pounds.  Tr. 561.

Liberty terminated Plaintiff's employment on April 27, 2012.  ER 110.  At

that time, Reaney invited Plaintiff to contact Dierking with any questions or

concerns.  Tr. 212.  On May 4, 2012, plaintiff sent a letter, through legal counsel,

seeking reemployment as a shipping clerk.  Tr. 624; ER 111.   Her request for

reinstatement did not ask for accommodation.  *Id.*  The very next day, Dierking

responded, provided Plaintiff with all of the previous medical documentation she had provided to Liberty, and invited Plaintiff to provide any new information regarding her physical limitations and restrictions.  ER 112-14; Tr. 486-88, 627-28. Plaintiff did not respond to Dierking's letter.  Tr. 628.  Instead, five days later, Plaintiff initiated legal action against Liberty.  Tr. 630.

## 8.    The Trial Court Proceedings.

Plaintiff filed charges with the Oregon Bureau of Labor and Industries (BOLI) alleging disability discrimination, workers' compensation discrimination and failure to reinstate injured worker claims.  Dkt. 1 at ¶ 9.  After an investigation, BOLI dismissed Plaintiff's complaint for lack of sufficient evidence.  ER 191.  The Equal Employment Opportunity Commission (EEOC) adopted BOLI 's findings and also dismissed Plaintiff's complaint.  *Id*.

Plaintiff sued Liberty asserting disability discrimination claims under the ADA and Or. Rev. Stat. § 659A.122 (collectively "ADA"),[4] and claims under Or. Rev. Stat. § 659A.040, (Workers' Compensation Discrimination), Or. Rev. Stat. § 659A.043 (Failure to Reinstate an Injured Worker), Or. Rev. Stat. § 659A.046 (Failure to Re-employ an Injured Worker), and Or. Rev. Stat. § 659A.199 (Whistleblowing).   Dkt. 1.  Having defeated Plaintiff's whistleblower and

---

[4] Oregon's disability law is to be construed in a manner consistent with similar provisions of the ADA.  Or. Rev. Stat. § 659A.139.  *Washburn v. Columbia Forest Products, Inc.*, 340 Or. 469, 474, 134 P.3d 161 (2006).

workers' compensation discrimination claims on summary judgment (Dkt. 45),

only Plaintiff's ADA claims and her WC failure to reinstate and re-employ claims

proceeded to trial.  Dkt. 58.

Liberty's trial memorandum informed the court that its defense to Plaintiff's

discrimination claims was twofold: (1) its termination decision was not

discriminatory because it was properly based on information Plaintiff provided to

Liberty that her disability rendered her physically unable to perform the essential

tasks of her job (Dkt. 79 at 7-9); and (2) no ADA duty to accommodate was

triggered because Plaintiff never requested disability accommodation and her

disability did not prevent her from making a request.  *Id.* at 10.  Additionally,

Liberty cautioned the court about the confusion likely to arise from the legally

distinct but overlapping terminology under the state WC statutory scheme and the

ADA.  Dkt. 79 at 2-3.

Following the parties' submission of proposed jury instructions, verdict

forms, and their respective objections, the court announced that it would draft its

own set of instructions and verdict form.  ER 41.  Both parties filed objections to

the court's drafted instructions and verdict form.  ER 43-53; ER 54-71.

During trial, despite Plaintiff's admission that she did not request

accommodation for her disability or propose any possible accommodations while

employed (Tr. 507, 615; ER 176-77), Plaintiff was permitted to argue that Liberty

violated the ADA because it knew throughout the pendency of Plaintiff's WC claim that she was medically restricted and needed "accommodation" and, upon learning of Plaintiff's disability, Liberty failed to initiate the process of exploring reasonable accommodations for Plaintiff. Tr. 743-45.

At the conclusion of the evidence, Liberty moved for JMOL on the ground that plaintiff failed to present sufficient evidence to satisfy her burden to show that an effective accommodation existed that would have enabled her to perform the essential functions of the job. ER 36-38. The court denied that motion as well as Liberty's later filed renewed JMOL motion and alternative Motion for New Trial. ER 39; ER 10.

## SUMMARY OF ARGUMENT

The jury verdict in favor of Plaintiff's FAC was prejudiced by the district court's erroneous instruction on Plaintiff's disability discrimination claims. Additionally, the court's denial of Liberty's renewed JMOL motion is reversible error since Plaintiff presented no evidence that any accommodation would more likely than not have enabled her to perform the essential functions of the shipping clerk job.

This case was never about why Liberty terminated Plaintiff's employment. Instead, this case was about whether Plaintiff was entitled to ADA protection. Stated differently, this case presented two different questions: (1) whether Liberty's

termination decision constituted unlawful discrimination; and (2) whether Plaintiff triggered Liberty's ADA duty to accommodate her disability such that if a reasonable accommodation existed that would have enabled her to perform the essential functions of the shipping clerk job, Liberty's failure to provide that accommodation was unlawful.

Plaintiff's discrimination theories argued both sides of the "qualified individual" issue. Plaintiff claimed that she was qualified *without* need for accommodation and Liberty's decision to terminate her employment was disparate treatment discrimination. Alternatively, Plaintiff claimed that she was qualified *with* accommodation and Liberty unlawfully failed to provide it.

The jury was never presented with an accurate statement of Plaintiff's claims or a correct statement of Plaintiff's required burden of proof under her FAC. The district court's combined disability discrimination instruction emphasized the elements of a DTC and buried the elements of Plaintiff's FAC. Having found that Plaintiff was not qualified without accommodation, it was imperative for the district court to properly and completely instruct the jury on the legally correct and distinct elements of a FAC, including the "triggering-duty" rule as accurately reflected in Ninth Circuit MJI No. 12.8. This did not happen.

If instructional error was the only error committed in this case, the jury's verdict would be vacated and this case would be remanded for a new trial. However,

the district court's erroneous denial of Liberty's renewed JMOL motion requires reversal of the verdict and entry of judgment in Liberty's favor because Plaintiff's claim that she was qualified to perform the job with reasonable accommodation and Liberty unlawfully failed to provide it, required her to prove that a specific reasonable accommodation existed that would have effectively enabled her to perform the essential functions of the job. Plaintiff's evidence fell far short of satisfying this burden.

Plaintiff's only evidence to support her burden on this issue were Trial Exhibits 22 through 33, consisting of equipment catalogues containing images of assistive devices. ER 130-75; Tr. 755-58. No witness, not even Plaintiff, testified that any proposed depicted equipment would have effectively enabled her to perform the essential lifting, moving and grasping functions required by her job. Indeed, the evidence demonstrated that Liberty had similar equipment available for use, but the jury's rejection of Plaintiff's claim that she could perform the job without accommodation necessarily rejected the notion that the pre-existing equipment would have enabled her to perform all the essential functions of the job.

The district court's acceptance of Plaintiff's argument that the only essential function of the shipping clerk job is to "move" things from point A to point B and that all the required physical maneuvering and lifting involved in auditing, boxing and shipping a random mix of product orders varying in size and weight could be

eliminated by the use of the pictured equipment, is contrary to the overwhelming evidence and is not supported in the law.

Liberty's argument begins with the court's error in denying Liberty's renewed JMOL motion since it requires reversal of the verdict and the entry of judgment in Liberty's favor. Only if the court does not accept this argument need it decide the instructional issue.

## ARGUMENT

## I.     The District Court Erred by Denying Liberty's Renewed JMOL Motion.

The district court denied Liberty's renewed motion for JMOL against Plaintiff's disability discrimination claims erroneously finding that substantial evidence in the record supported the jury's verdict. ER 10. Review of the record shows that the jury's finding that Plaintiff was qualified to perform the essential functions of the regular-duty shipping clerk job with reasonable accommodation is not supported by evidence that any accommodation existed that would have enabled Plaintiff to perform all the essential functions, including maneuvering and lifting heavy items.

### A.     Preservation and Standard of Review.

At the close of evidence, Liberty moved for JMOL on the ground that Plaintiff presented no evidence of any accommodation that would have effectively enabled

her to perform all the essential functions of her job. ER 35-38. After trial, Liberty filed a renewed JMOL on this ground. Dkt. 139.

This court reviews *de novo* a challenge to the district court's denial of a renewed motion for judgment as a matter of law. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir.2008). This review requires this court view the evidence in the light most favorable to the non-moving party—here, Plaintiff—and draw all reasonable inferences in her favor. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149-50, 120 S. Ct. 2097 (2000). The test is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict. *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir.2002)). To sustain a jury's verdict, this court must determine that sufficient evidence was presented to support the jury's conclusion. *Harper*, 533 F.3d at 1021. It was not.

### B. The District Court Correctly Stated the Applicable Legal Principles But Made Erroneous Findings.

#### 1. The Law Places the Burden on Plaintiff to Prove the Existence of a Reasonable Accommodation.

The ADA prohibits employment discrimination only against "qualified individual[s]" with disabilities. 42 U.S.C. § 12112(a). A "qualified individual" is an individual with a disability "who, with or without reasonable accommodation, can perform the essential functions of the position that such individual holds or desires." 42 U.S.C. § 12112(8); *Love v. Prime,* 259 Or. App. 1, 4-5, 312 P3d 562 (2013),

quoting Or. Rev. Stat. 659A.115 (2007). The employee bears the burden of proving that she is a "qualified individual" to whom ADA protections apply. *Bates v. United Parcel Svc., Inc.*, 511 F.3d 974, 989 (9th Cir.2007) (en banc)

""Essential functions" are fundamental job duties of the employment position . . . not includ[ing] the marginal functions of the position." *Bates*, 511 F.3d at 989-90 (brackets in original), quoting 29 C.F.R. § 1630.2(n)(1). Job functions can be essential even if they are performed infrequently. *Kees v. Wallenstein*, 161 F.3d 1196, 1199 (9th Cir.1998). "[I]dentification of the essential functions of a job requires a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice." *Borkowski v. Valley Central School District*, 63 F.3d 131, 140 (2nd Cir.1995); *White v. York Intern. Corp.,* 45 F.3d 357, 362 (10th Cir.1995) (finding that because the job "exist[ed] for the express purpose of moving [objects], **it is obvious** that the lifting * * * requirements" were essential functions of the job) (emphasis added); *Gilbert v. Frank*, 949 F.2d 637, 642 (2nd Cir.1991) (finding that lifting and handling mail bags were essential functions of mail clerk job).

"If a disabled person cannot perform a job's "essential functions" (even with a reasonable accommodation), then the ADA's employment protections do not apply." *Cripe v. City of San Jose*, 261 F.3d 877, 884-85 (9th Cir.2001). "The ADA does not require an employer to exempt an employee from performing essential functions or

to reallocate essential functions to other employees." *Dark v. Curry County*, 451
F.3d 1078, 1089 (9th Cir.2006), *cert. den*. 549 U.S. 1205 (2007), citing 29 C.F.R. §
1630, App. at 344.

In the present case, the jury properly found that Plaintiff was unable to perform
the essential functions of the job without accommodation. ER 31. Accordingly, the
district court correctly stated that Plaintiff bore the burden to prove that a reasonable
accommodation could have been made which would have enabled her to perform
those functions. ER 6, citing *Dark*, 451 F.3d at 1088; *Zukle v. Regents of University
of California*, 166 F.3d 1041, 1046 (9th Cir.1999); *Samper v. Providence St. Vincent
Medical Center*, 675 F.3d 1233, 1237 (9th Cir.2012). Both federal and state law
places this initial burden of proof on the plaintiff. *U.S. Airways, Inc. v. Barnett*, 535
U.S. at 402; *Honstein v. Metro Ambulance Service, Inc.* 193 Or App at 466
(explaining Oregon law requires plaintiff establish "that the employer can make a
reasonable alteration or adjustment to its practices" before the burden shifts to
employer to demonstrate undue hardship).

Specifically, this Circuit requires the plaintiff prove that "'the suggested
accommodation would, more probably than not, have resulted in her ability to
perform the essential functions of her job.'" *Mustafa v. Clark County Sch. Dist.*, 157
F.3d 1169, 1176 (9th Cir.1998) (quoting *Buckingham v. United States*, 998 F.2d 735,

742 (9th Cir.1993).[5] "An appropriate reasonable accommodation must be effective in enabling the employee to perform the duties of the position." *Humphrey v. Mem'l Hospital Ass'n* , 239 F.3d 1128, 1137 (9th Cir. 2001), *cert. den.*, 535 U.S. 1011, 122 S. Ct. 1592 (2002) (internal quotations marks omitted) (quoting *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir.2000) (en banc), *vacated on other grounds*, *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 122 S. Ct. 1516 (2002).

A plaintiff "may not rely on merely hypothetical suppositions and conjecture" to satisfy her burden of proof. *McMackins v. Elk Grove Unified School Dist.,* 21 F.Supp.2d 1201, 1205 (E.D. Cal.1998). Additionally, a plaintiff's subjective belief that she could perform the essential functions with accommodation is not sufficient to meet her burden of proof. *White*, 45 F.3d at 362-63.

If plaintiff carries this initial burden, then the burden is shifted to defendant to show that the proposed accommodation was not reasonable because it caused an "undue hardship." *Mustafa*, 157 F.3d at 1176. In this case, the evidence was insufficient to shift the burden to Liberty to show "undue hardship."

---

5 *See Fallar v. Compuware Corp.*, 202 F.Supp.2d 1067, 1083, n.12 (D.Ariz.2002) ("Although both cited cases are based on claims under the Rehabilitation Act of 1973, 29 U.S.C. § 794, '[i]nterpretations of the ADA are guided by Rehabilitation Act precedent'" (quoting *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1248 n. 2 (9th Cir.1999).

### 2.    The Evidence Failed to Satisfy Plaintiff's Burden of Proof.

The uncontroverted evidence at trial was that during her employment, Plaintiff did not request or suggest any disability accommodation.  Tr. 315-16, 358, 507, 615; ER 176-77.  Even at trial Plaintiff's testimony was completely devoid of any—even theoretical—discussion about an accommodation Liberty could and should have provided that would have enabled her to perform the essential functions of repetitive grasping, lifting and moving heavy objects.

Plaintiff's only proffered evidence to support her burden were shipping equipment catalogs depicting various assistive devices.  Tr. 435; ER 130-75. No witness, lay or expert, testified that any of the pictured devices would have effectively enabled Plaintiff to perform the repetitive lifting and maneuvering of unpredictable product mixes and shipping containers varying in weights of up to 66 pounds in the particular space that the shipping department occupied at Liberty. In fact, to the extent there was any testimonial evidence about the pictured equipment, it was that none of the devices would have entirely eliminated Plaintiff's inability to perform all of the essential functions of the job.  Tr. 363, 481-82.

Plaintiff's counsel introduced the pre-admitted catalog Exhibits 22-33 during New's testimony.  New was shown several of the exhibits and asked merely whether

the pictured device was "tried out for [plaintiff.]"  Tr. 226-29.[6]  New did not testify,

nor was she qualified to testify as to the efficacy of any of the devices.  *Id.*  Instead,

New's testimony was either that an identified device was not tested for plaintiff or

that it was similar to one Liberty already provided.  *Id.*  Accordingly, New's limited

testimony provided no evidence to support a reasonable jury finding that any of the

depicted equipment would have more probably than not enabled Plaintiff to perform

the essential functions of the regular-duty job.

The exhibits were again presented during Dierking's examination where he

testified that he has never found any device in any catalogue that would eliminate all

of the variety of moving, lifting and taping functions that are required to fulfill a

shipping order at Liberty.  Tr. 482-83.  Dierking's testimony established that he had

regularly reviewed similar catalogs over the years and had received sales pitches for

"a variety of different equipment similar to [those depicted]."  Tr. 435-36, 482.

Additionally, Dierking had worked in Liberty's shipping department for over a year

when the company first started (Tr. 437) and, when the company relocated, Dierking

---

[6] New's testimony informed the jury that to her knowledge certain pictured equipment had not been considered as possible accommodations for Plaintiff's disability.  *See* Tr. 226 - mobile lift table not considered; Tr. 226 - large mobile scissor lift table, similar to a smaller table Liberty utilized, not considered; Tr. 227 - 1,000 pound capacity motorized lift table not considered; Tr. 228 - portable lift table not considered; Tr. 229- mechanisms for lifting drums not considered.

was very involved in reestablishing the shipping department, including an ongoing

process of evaluating equipment to make the job easier and more productive. Tr.

480. In an effort to consider the usefulness of new assistive equipment, Dierking has

visited other businesses' shipping departments, talked with others in the industry, and

has used UPS's consulting services to assist in improving the efficiency of the

department. Tr. 481.

Plaintiff's catalog exhibits proffered merely speculative and hypothetical

evidence of theoretical accommodation which is legally insufficient to satisfy her

required burden of proof. *McMackins,* 21 F.Supp.2d at 1205. The only reasonable

conclusion supported by the overwhelming evidence was that Plaintiff could only

perform the essential functions of her job if she continued "light duty" work which

delegated lifting and grasping tasks to coworkers. As a matter of law, eliminating

essential job duties or delegating them to other employees is not a reasonable

accommodation. 29 C.F.R. §§ 1630.2(o), (p)(2)(v); *see Rehrs v. Iams Co.*, 486 F.3d

353 (8th Cir. 2007) (an accommodation that would cause other employees to work

harder is not mandated); *Borkowski*, 63 F.3d at 140 ("individuals whose physical

condition precludes them from engaging in heavy lifting, and who seek jobs for

which such lifting is shown to be an essential function, need not be accommodated

by shifting responsibility for lifting to other individuals"). The overwhelming

evidence demonstrated that Plaintiff's co-workers had to work harder while she was

on "light-duty" and was unable to perform the heavy lifting required by the job. Tr. 146-47, 240-41, 258, 262-63, 272, 321-22, 365-66, 393-94.

### 3. The District Court's Denial of JMOL was Based on Erroneous Findings.

The district court provided four reasons for denying Liberty's renewed JMOL motion, all of which are without merit. ER 7-10.

First, the court found that because there was evidence supporting the conclusion that moving items from point A to point B was an essential job function, a reasonable juror could accept Plaintiff's *argument* that lifting and carrying objects were not essential functions. ER 7-8. Merely because evidence was presented that moving boxes was an essential function, does not preclude a reasonable finding based on the evidence that other essential job functions existed, such as lifting. Additionally, Plaintiff presented no *evidence* to support her mere argument that all lifting and carrying of heavy objects were merely historical, unnecessary methods of performing the job. Substantial evidence in the record demonstrates that repetitive lifting, including heavy product and boxes, was part of each process of the shipping clerk job. *See* Statement of Facts, *supra*, pp. 9-12. The court's reasoning is contrary to *White* and *Gilbert*, *supra* , which stand for the proposition that lifting is obviously an essential function of a job that exists for the express purpose of moving items, including a mail clerk job.

Second, the district court's finding that substantial evidence supported Plaintiff's burden to prove that a reasonable accommodation existed because "a reasonable jury could conclude that Defendant was aware of Plaintiff's limitations but failed to accommodate her" (ER 8) is analytically flawed. Under ADA standards, there is no failure to accommodate unless a reasonable accommodation existed.

Third, the district court reasoned that sufficient evidence supported Plaintiff's burden because evidence showed that carts were available for employee use at Liberty and that Plaintiff believed she could push and pull the carts with accommodation. *Id.* at 9. This reasoning ignores the jury's finding that Plaintiff could *not* perform the essential functions of the job without accommodation. ER 31. That jury finding is consistent with the evidence that Liberty's pre-existing assistive devices did not eliminate all the essential functions of the job. *See* Statement of Facts, *supra*, at p. 11. The court's further reasoning that there was evidence that "other assistive devices existed in the industry that Defendant could have affordably purchased for Plaintiff" (ER 8) is also faulty. Merely because assistive equipment "existed" and was "affordable" is not evidence that such equipment would more likely than not have enabled Plaintiff to perform all the essential functions of the job.

Finally, the court's finding that "[a] reasonable jury could conclude [from Exhibits 22 through 33] * * * that the assistive devices discussed at trial would have

alleviated Plaintiff's performance issues (ER 10), is simply wrong for the reasons explained in the preceding section.

Accordingly, there being no proper basis for the court to have concluded that Plaintiff presented legally sufficient evidence to support her burden of proof that an effective accommodation existed, the court's denial should be reversed and judgment entered in Liberty's favor.

This court need only decide the instructional errors raised below if it does not reverse based on the error discussed above.

## II. The District Court's "Disability Discrimination (Claim One)" Instruction Was Legally Incorrect, Confusing and Prejudicial to Liberty.

Over the parties' objections, the court's final instructions told the jury that Plaintiff asserted one disability discrimination claim against Liberty, lumping her two alternative theories together under the generic description, "disability discrimination in violation of [the ADA] and a related Oregon law" (Tr. 699) or "the ADA claim." ER 83. The erroneous instruction buried Plaintiff's primary FAC within the elements of the DTC obscuring Plaintiff's required proof under her FAC, improperly allowing the jury to consider an issue irrelevant to a FAC, and denying the jury an opportunity to properly decide the foundational factual issue of whether or not Liberty's ADA duty to accommodate was even triggered.

### A.    Standard of Review and Preservation.

The district court's instructional error arises from two separate legal errors: (1) improperly combining Plaintiff's alternative DTC and FAC into one incorrect and confusing instruction (ER 72-83); and (2) misstating the law regarding Plaintiff's burden to prove that Liberty's ADA duty to accommodate her disability was triggered.  ER 78-79.

Both parties objected to the trial court's draft Instruction No. 14:  Plaintiff's Disability Discrimination Claim (Claim 1), on the basis that it misstated the law by combining Plaintiff's two alternative discrimination theories into one claim that failed to properly address the FAC.  ER 57-58; ER 64; ER 45-48.  Both parties requested alternative instructions that separately stated the elements of the two claims.  ER 46-47; ER 63.  Both parties also objected to the court's proposed verdict form, agreeing that it "should be modified to address Plaintiff's [FAC]."  ER 51; ER 69-71.

Additionally, Liberty requested Ninth Circuit MJI No. 12.8, ADA – REASONABLE ACCOMMODATION, which includes an accurate statement of a plaintiff's burden to prove that the duty to accommodate her disability was triggered.  ER 204.  Liberty objected to the court's proposed modified "triggering-duty" instruction because it incorrectly told the jury that in the absence of a request for accommodation the duty to accommodate was nonetheless triggered if the

employer was aware of the employee's need for accommodation.[7]  Without

waiving its prior objection, Liberty requested the court's instruction at a minimum

be modified to include language that Plaintiff either requested an accommodation

due to a disability or "Defendant became aware that Plaintiff needed

accommodation and that Plaintiff desired accommodation."  ER 48-49 (underline

in original); Tr. 694-95.

The district court rejected the parties' objections and proposed modifications

to the instructions.  ER 40-41; Tr. 695.

Jury instructions must fairly and adequately cover the issues presented, must

correctly state the law, and must not be misleading.  *White v. Ford Motor Co*., 312

F.3d 998, 1012 (9th Cir.2002).  This court reviews *de novo* whether a jury

instruction misstates the law.  *Wall Data Inc. v. Los Angeles County Sheriff's

Dep't.,* 447 F.3d 769, 784 (9th Cir.2006).  "[E]ach party is entitled to an instruction

about his or her theory of the case if it is supported by law and has foundation in

the evidence."  *Hunter v. City of Sacramento*, 652 F.3d 1225, 1232 (9th Cir.2011)

(internal citations and quotations omitted).

Prejudice is presumed when an erroneous jury instruction is given.  *Hunter*,

652 F.3d at 1235; *Gambini v. Total Renal Care, Inc.*, 486 F.3d 1087, 1092 (9th

---

[7] This same objection was made to Plaintiff's proposed Instruction No. 16 ADA –
Reasonable Accommodation.  Dkt. 77 at 3.

Cir.2007) (prejudicial error results when, looking to the instructions as a whole, the substance of the applicable law was not fairly and correctly covered). Thus, jury instruction error requires reversal unless it is proven "more probable than not that the jury would have reached the same verdict had it been properly instructed." *Hunter*, 652 F.3d at 1235 (internal citations and quotations omitted). Under the harmless error analysis, the prevailing party is not entitled to have disputed factual questions resolved in its favor. *Swinton v. Potomac Corp.,* 270 F.3d 794, 805-06 (9th Cir.2001).

### B. The Flawed Jury Instruction and Resulting Jury Verdict.

The court's erroneous instruction is at ER 72-83. In summary, the court initially instructed that Plaintiff's "disability discrimination" claim required her to prove three elements: (1) Plaintiff had an actual, regarded as or record of disability; (2) Plaintiff was a "qualified individual" as defined in the ADA; and (3) "Liberty, made its decision to terminate her employment, or its later decision not to rehire her, on the basis of [Plaintiff's] disability, meaning that her disability, or Liberty's belief that she was disabled, or her record of a disability was a motivating factor in Liberty's decision or decisions." Tr. 699-700. That Plaintiff had a disability and that Liberty's employments decisions were based on her disability were not disputed.

Later, the court reiterated the combined instruction emphasizing Plaintiff's claim that Liberty made the decision to terminate her employment on the basis of her disability. ER 72-73. This was followed by a confusing statement that Liberty denied that claim asserting that its termination decision was made because she could not perform the essential functions of Liberty's shipping clerk job. *Id*. Again, there was no dispute that Liberty made the decision because it believed her disability rendered her unable to perform the required tasks of the regular-duty job.

The court then again reiterated the three *prima facie* elements and went on to explain each of "the three elements in further detail." ER 74. Imbedded in the second "qualified individual" element, the court gave its modified FAC "triggering-duty" instruction. ER 78-79. Specifically, the court instructed:

> "To establish or trigger the defendant's * * * duty to provide a reasonable accommodation, the plaintiff * * * must prove by a preponderance of the evidence both of the following elements:
>
> 1 comes in two alternatives. 1A deals with a request for awareness. 1A, plaintiff requested of defendant an accommodation due to a disability. Or 1B, defendant became aware that plaintiff needed an accommodation. Either one of those is element No. 1.
>
> * * * * *."

ER 78.

Also embedded in the "qualified individual" element, was the court's description of the ADA-required interactive accommodation process. ER 79-80. After explaining that process the court instructed:

> "So all of that is part of the second element under the ADA claim."

ER 82.

The final instruction of the combined disability discrimination claim explained "the third element of the ADA claim * * * is causation" and that to prevail on this "element of plaintiff's ADA claim, plaintiff * * * must prove that defendant, Liberty, terminated [Plaintiff's] employment or failed to rehire her on the basis of her disability, or on the basis of Liberty's perception of [Plaintiff's] disability, or on the basis of a record of [Plaintiff's] disability." ER 82. The court continued:

> Plaintiff was terminated or not rehired on the basis of her disability or perception or record if her disability was a motivating factor in defendant's decision to terminate or not rehire plaintiff.

> A "motivating factor" is a factor that played a part in Liberty's decision to terminate [Plaintiff] or not to rehire her, even if it was not the only factor in that decision. **That's claim 1, the ADA claim.**

ER 82-83 (emphasis added). The court did not explain, as the parties requested, that Plaintiff's failure-to-accommodate theory did not include this third element.

The verdict form compounded the instructional errors by mirroring the instructions and lumping Plaintiff's DTC and FAC into a generic "Claim One." ER 30-33. The verdict reveals that the jury rejected Plaintiff's DTC based on "no-need" for accommodation and accepted Plaintiff's argument that she was qualified

to do the job with accommodation. ER 32. The favorable FAC verdict is tainted, however, by the erroneous instructions which failed to properly identify the separate elements of the FAC, that included the undisputed and irrelevant causation element of a DTC, and that denied the jury the opportunity to decide the foundational issue of whether Plaintiff triggered a duty to accommodate.

### C. Disparate Treatment and Failure to Accommodate are Distinct Theories with Unique Elements Requiring Separate Instructions.

42 U.S.C. § 12112(a) provides the "general rule" regarding discrimination against persons with disabilities. It states:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

*Id.* Under this substantive provision of the ADA, a *prima facie* case of disparate treatment employment discrimination is established if a plaintiff shows: (1) she is disabled (whether actual, record of, or regarded as) within the meaning of the ADA; (2) she was otherwise qualified with or without accommodation; and (3) she suffered an adverse employment action on the basis of her disability. *Nunes*, 164 F.3d at 1246; *Fallar,* 202 F.Supp.2d at 1082.

The Supreme Court has said that "[d]isparate treatment * * * is the most easily understood type of discrimination." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52, 124 S.Ct.513 (2003) (internal citation and quotation marks omitted).

Disparate treatment discrimination arises when a similarly situated disabled individual is treated differently than a less or non-disabled individual on the basis of a disability. *Davis v. Team Elec. Co.,* 520 F.3d 1080, 1089 (9th Cir.2008) (discussing DTC under Title VII); *Raytheon Co.*, 540 U.S. at 52, quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S. Ct. 1701 (1993) (discussing DTC in context of Age Discrimination Employment Act) ("Liability in a disparate treatment case 'depends on whether the protected trait * * * actually motivated the employer's decision.'").

Disparate treatment is just one of various forms of disability discrimination prohibited by the ADA. 42 U.S.C. § 12112(b); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 n. 13, 93 S. Ct. 1817 (1973); *Wells v. Chrysler Group, LLC,* 559 F.App'x 512, 514 (6th Cir.2014) (Discrimination "is a general term that encompasses, among other theories disparate treatment, harassment, and failure to accommodate."). The ADA separately prohibits disparate treatment and failure to accommodate discrimination. 42 U.S.C. at §§ 12112(a), (b)(5); *see also McGary v. City of Portland*, 386 F.3d 1259, 126667 (9th Cir.2004) (recognizing ADA as a unique anti-discrimination statute that not only mandates equality of treatment, prohibiting employment decisions made on the basis of a person's disability, in some circumstances it actually requires special treatment in the form of a reasonable accommodation); *Dunlap v. Ass'n of Bay Area Gov'ts*, 996 F.Supp.

962, 965 (N.D.Cal.1998) ("[T]he ADA not only protects against disparate treatment, it also creates an affirmative duty in some circumstances to provide special, preferred treatment or 'reasonable accommodation.'").

### 1.   The FAC is a Freestanding Claim with Distinct Elements.

While it is seemingly obvious that disparate treatment and failure to accommodate claims are not the same and "must be analyzed differently" (*McGary*, 386 F.3d at 1266, citing with approval *Butlemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1283 (7th Cir.1996)), as demonstrated by the present case, these two claims are often confused.  *See Fallar,* 202 F.Supp.2d at 1083 n. 10; *Moore v. Mariott Intern, Inc.*, 2014 WL 5581046 at 13 (D.Ariz. Oct. 31, 2014) (noting that the parties' briefing often mixed discussions of disparate treatment and failure to accommodate which are "distinct theories of liability under the ADA and are analyzed differently.").  As one commentator has noted, the confusion "is attributable, at least in part, to parties and courts failing to clearly differentiate between [the two] claims" which address "different types of discrimination." Brennan, Megan I. (2013) "Need I Prove More: Why an Adverse Employment Action Prong Has No Place in a Failure to Accommodate Disability Claim," *Hamline Law Review*: Vol. 36, Iss. 3, Art. 7 ("Brennan: Failure to Accommodate") at 501-02.  This commentator has urged that the "critical distinction" between the two claims "gets lost in the analysis" and "[t]his confusion must stop."  *Id.* at 502.

The confusion in this Circuit appears to originate with case law that frames employment disability discrimination claims generally as requiring proof of the *prima facie* elements of disparate treatment without making clear that the elements of a specific form of disability discrimination may differ depending on the factual scenario giving rise to the claim. *See Allen v. Pac. Bell,* 348 F.3d 113, 1143 (9th Cir.2003) (stating that a *prima facie* FAC is established if plaintiff shows (1) she is disabled; (2) she is qualified, with or without reasonable accommodation; and (3) she suffered an adverse employment action); *Samper*, 675 F.3d at 1237 (merely reciting the elements identified in *Allen*). Neither *Allen* nor *Samper* involved circumstances where the plaintiff made both a DTC and a FAC, nor did the facts of those cases give rise to a need for the court to address the differences between the two claims.

Courts that have squarely addressed this issue have correctly found that a FAC is distinct from a DTC and requires a different analysis. *McGary*, 386 F.3d at 1266; *see also Fallar*, 202 F.Supp.2d 1067, 1082- 85 (separately analyzing DTC and FAC); *Johnson v. Evangelical Lutheran Good Samaritan Society*, 2005 WL 230834 at *7-8 (D.Or. Aug. 2005) (noting important differences between DTC and FAC with respect to methods of proof); *Foster v City of Oakland*, 649 F.Supp.2d 1008, 1016-21 (N.D. Ca.2009) (analyzing FAC separately from general discrimination claim); *Moore,* 2104 WL 5581046 * 13 ("disparate treatment and

failure to accommodate are distinct theories of liability under the ADA and are analyzed differently"); *EEOC v. AutoZone, Inc.*, 630 F.3d 635, 638 n. 1 (7th Cir.2010) ("[T]he [district] court appears to have mistakenly applied an element of the disparate treatment test as part of its evaluation of reasonable accommodation * * *.  No adverse employment action is required to prove a failure to accommodate."); *Withers v. Johnson*, 763 F.3d 998, 1003 (8th Cir.2014) (a "[DTC] requires proof of discriminatory intent, while [a FAC] does not").

In *McGary*, the Ninth Circuit addressed the confusion about the distinct nature of the two claims, finding that the district court had misconstrued McGary's claim as a disparate treatment or impact claim, rather than a separately actionable FAC.  386 F.3d at 1265-66.  The Ninth Circuit clarified that a plaintiff "need not allege either a disparate treatment or disparate impact in order to state a reasonable accommodation claim."  *Id.* at 1265, citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 276-77 (2nd Cir.2003) ("[A] claim of discrimination based on a failure reasonably to accommodate is distinct from a claim of discrimination based on disparate impact.").

Like in *McGary,* the Eighth Circuit in *Peebles v. Potter*, recognized that "[t]he failure to make reasonable accommodation in the employment of a disabled employee is a separate form of prohibited discrimination [from disparate treatment discrimination].  354 F.3d 761, 766 (8th Cir.2004).  In *Peebles*, a former United

States Postal Service employee brought a disability discrimination action under the

Rehabilitation Act alleging that the Postal Service's refusal to place him in a light-

duty position constituted a failure to reasonably accommodate his disability. *Id.* at

764. The Postal Service argued that Peebles claim failed because he could not

present any evidence to support an inference that intentional discrimination

motivated the adverse employment action. *Id*. at 766. Peebles argued that he was

making a FAC, not a DTC and, therefore, he was not required to prove that the

adverse employment action was motivated by discriminatory animus.

The *Peebles* court explained that the two claims are different because "a

claim against an employer for failing to reasonably accommodate a disabled

employee does not turn on the employer's intent or actual motive." *Id.* In a

failure to accommodate case, the "concern is compelling behavior, not policing an

employer's actions that, when accompanied by an invidious discriminatory intent,

are unlawful." *Id.* at 767. The court concluded:

> As such, it is not the employer's discriminatory intent in
> taking adverse employment action against a disabled individual
> that matters. Rather, discrimination occurs when the employer
> fails to abide by a legally imposed duty. The known disability
> triggers the duty to reasonably accommodate and if the employer
> fails to fulfill that duty, we do not care if he was motivated by the
> disability.

*Id.* Accordingly, a DTC requires a showing of the defendant's subjective intent to

discriminate. *Raytheon Co.*, 540 U.S. at 52; *Reeves,* 530 U.S. at 153; *Costa v.*

*Desert Palace, Inc.*, 299 F.3d 838, 854 (9th Cir.2002) (en banc), *aff'd*, 539 U.S. 90, 123 S. Ct. (2003) (Title VII case instructing that "[DTCs] require the plaintiff to prove that the employer acted with conscious intent to discriminate.").

Unlike a DTC, under a FAC the "'discrimination' is framed in terms of the failure to fulfill an affirmative duty to provide reasonable accommodation. *Peebles*, 354 F.3d at 767; s*ee Fortyune v. Am. Multi-Cinema, Inc.* 364 F.3d 1075, 1086 (9th Cir.2004) (explaining under Title II, "the ADA defines discrimination as a public accommodation treating a disabled patron the same as other patrons despite the former's need for a reasonable modification.").   It is not important whether the employer was motivated by the disability.  *Peebles*, 354 F.3d at 767.

In *U.S. Airways, Inc. v. Barnett*, the Supreme Court explained the statutory basis of a FAC as follows:

> First, the ADA says that an employer may not 'discriminate against a qualified individual with a disability.'  42 U.S.C. § 12112(a).  Second, the ADA says that a 'qualified individual includes 'an individual with a disability who, *with* or without *reasonable accommodation*, can perform the essential functions of' the relevant 'employment position.' § 12111(8) (emphasis added).  Third, the ADA says that 'discrimination' includes an employer's '*not making reasonable accommodations* to the known physical or mental limitations or an otherwise qualified employee, *unless* [the employer] can demonstrate that the accommodation would impose an *undue hardship* on the operation of [its] business.' § 12112(b)(5)(A) (emphasis added).  Fourth, the ADA says that the term 'reasonable accommodation' may include * * *.' § 12111(9)(B).

535 U.S. at 396 (internal quotations and emphases in original). Notably, there is no reference to discriminatory intent, an adverse employment decision, or discrimination on the basis of the disability.

Although the precise elements of a FAC are not uniformly stated, most courts agree that fundamentally a FAC requires a showing that the plaintiff is disabled within the meaning of the ADA, that she is a qualified individual under the ADA, and that employer failed to accommodate the disability. *Foster,* 649 F.Supp.2d at 1021. In order to prevail on a FAC, "the plaintiff bears the initial burden to show the existence of a reasonable accommodation." *Zukle*, 166 F.3d at 1046. If plaintiff satisfies that burden, then the burden shifts to the employer to demonstrate that the suggested accommodation is unreasonable. *Fallar*, 202 F.Supp.2d at 1083, citing *Mustafa*, 157 F.3d at 1176.

Additionally, an employer has no ADA duty to provide accommodation unless the employee requests it or is unable to do so because her disability prevents her from making the request, but the employer nonetheless is aware of the disability and the employee's desire for accommodation. *Fallar*, 202 F.Supp.2d at 1084; *Barnett,* F.3d at 1109; *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1188-89 (9th Cir.2001).

In failure-to-accommodate cases where the employer knows that the employee is experiencing difficulty in the workplace as a result of his disability the issue often

arises as to whether the employer engaged with the employee in the ADA required interactive process to assess potential accommodations. *Fallar*, 202 F.Supp.2d at 1083-84, quoting *Barnett*, 228 F.3d at 1114. In *Barnett*, the Ninth Circuit instructed that an employer's "mandatory" obligation to engage in the interactive process "is triggered by an employee or an employee's representative giving notice of the employee's disability and the desire for accommodation." *Id.*

Accordingly, a FAC claim does not include the third causal element of a DTC requiring proof that an adverse employment action was taken on the basis of the disability. Additionally, a FAC has the distinct elements of requiring that plaintiff show that the employer's duty to provide a reasonable accommodation was triggered and show that a reasonable accommodation existed that would have allowed her to perform the essential functions of the job.

### 2. The Distinct Analysis Required by the Two Claims Got Lost in the Single Disability Discrimination Instruction.

The district court's (one) disability discrimination instruction ignored the differences in the two discrimination theories and failed to frame the proper analysis for the jury. During jury instruction discussion pretrial, the district court explained that it understood the "conceptual" difference between DTC and FAC claims, but was confused about whether the elements of the claims differed. PTC2 at 4. Despite the parties' objections to the combined instruction, the district court erroneously believed it was compelled to follow *Allen* and *Samper*, and to

disregard *McGary* and the overwhelming authority instructing that the two claims are distinct and must be analyzed differently.  PTC2 at 11.

In combining the two claims into one instruction, the court failed to appreciate that the "qualified individual" question, *i.e.* whether Plaintiff could perform the essential functions *with or without* accommodation, was the critical point where the analysis of the two claims split and the elements of the required proof differed.  For Plaintiff's DTC, the determinative issue was whether Liberty's termination decision was unlawful because, as Plaintiff's claimed, despite her disability, she was similarly situated to other non-disabled employees and qualified to perform the essential functions of the job with the aid of pre-existing assistive equipment and without the need for accommodation.  Dkt. 58 at 6; Tr. 708.  The first and third elements of Plaintiff's DTC were not disputed.  Liberty never maintained that its termination decision was based on anything other than its belief that Plaintiff's physical limitations resulting from her disability rendered her unable to perform the essential functions of a shipping clerk.  PTC2 at 21.

The jury's finding that Plaintiff was *not* qualified without accommodation necessarily rejected Plaintiff's DTC claim that Liberty's termination decision constituted unlawful disability discrimination.  At that point, consistent with the trial court's initial view, the case came down to Plaintiff's FAC.  As such, proper

instructions on the distinct elements of the FAC were critical to Liberty's entitlement to a fair verdict under the law. This did not occur.

Instead, the jury received a legally incorrect instruction that blurred Plaintiff's required proof under her FAC into instructions on Plaintiff's separate and distinct DTC and that improperly told the jury to consider the causal element of Plaintiff's DTC to resolve Plaintiff's FAC. This error was compounded by the verdict form question that compelled the jury to decide the undisputed, irrelevant and prejudicial fact under the FAC that Liberty's termination decision was made on the basis of her disability. The taint of prejudice to Liberty is undeniable. In any event, this instructional error is presumed prejudicial and requires the verdict be vacated. *Hunter*, 652 F.3d at 1235.

## D. The District Court's Modified "Triggering-Duty" Instruction also Misstated the Law on a Decisive Issue in the Case.

The court's modified "trigging-duty" instruction prejudiced the jury's verdict by failing to correctly explain a fundamental issue presented by the evidence. The instruction incorrectly stated the exception to the rule that an employee's request for disability accommodation triggers the employer's ADA duty to provide reasonable accommodation, and misinformed the jury that in the absence of a request for accommodation, plaintiff could satisfy her burden to prove that a duty to accommodate was triggered by showing that Liberty was aware of her disability and her need for accommodation. ER 78-79. That is not the law.

An employer is not liable under the ADA for failing to accommodate an employee with a disability who cannot perform the essential functions of her job without accommodation, when that duty was not triggered. *Spitzer v. The Good Guys, Inc.,* 80 Cal.App.4[th] 1376, 1384 (2000), *citing* 29 C.F.R. § 1630.9 App. (1999); *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 165 (5th Cir.1996). As discussed below, the onus is on the employee to trigger that duty.

### 1. Legal Authority Supports Liberty's Requested Instruction.

The relevant portion of the requested MJI No. 12.8, ADA – REASONABLE ACCOMMODATION is at ER 204. This instruction correctly states Ninth Circuit law that an ADA duty to accommodate a plaintiff's disability is established only if the plaintiff proves that she requested defendant accommodate her disability or that the defendant knew (or had reason to know) that the plaintiff had a disability that was causing her work place problems *and the disability prevented the plaintiff from requesting a reasonable accommodation*. *Id.* (Emphasis added); *see Barnett,* 228 F.3d at 1112; *Brown*, 246 F.3d at 1188; *Zivkovic*, 302 F.3d at 1089. The disability accommodation request "need not mention the ADA or use the phrase 'reasonable accommodation.'" *Barnett*, 228 F.3d at 1112 (internal quotation omitted). However, the employer is not required to speculate about the employee's desire for accommodation, nor can an employee "expect the employer to read his mind and

know he secretly wanted a particular accommodation" and sue the employer for not

providing it. *Schmidt v. Safeway, Inc.* 864 F.Supp. 991, 997 (D.Or.1994).

It is well established in this Circuit and others that "before an employer's duty

to provide reasonable accommodations—or even to participate in the "interactive

process"—is triggered under the ADA, the employee *must* make an adequate request,

thereby putting the employer on notice" that the employee desires to be

accommodated due to a disability. [8] *E.E.O.C. v. C.R. England, Inc.* 644 F.3d 1028,

1049 (10th Cir.2011) (emphasis added); *See Brown v. Lucky Stores, Inc.*, 246 F.3d

at1188 (employer had "no duty to provide an accommodation for [plaintiff], given

that she never requested one") (relying on *Barnett,* 228 F.3d at 1112, holding that the

employer's duty to engage in an interactive process is triggered only after an

employee makes a request or is excepted from doing so); *Kinyon v. Fred Meyer*

*Stores, Inc.,* 2004 WL 2303595 at 10 (D.Or. October 12, 2004) (no duty to

accommodate where plaintiff made no request and presented no evidence that her

disability prevented her from doing so); *Benz v. West Linn Paper Co.,* 803 F.Supp.2d

1231, 1235 (D.Or.2011) ("An employer generally does not have a duty to

accommodate an employee until the employee asks."); *see also Woodman v. Runyon*,

---

[8] Oregon law also places the burden on the employee to request an accommodation in order to trigger the employer's duty to accommodate. *Benz v. West Linn Paper Co.*, 803 F.Supp.2d 1231, 1257 (D.Or.2011) (citing OAR 839-006-0206(4)).

132 F.3d 1330, 1345 (10th Cir.1997) ("The 'employee's initial request for an accommodation* * * triggers the employer's obligation to participate in the interactive process.'") (quoting *Taylor v. Principal Fin. Grp. Inc.*, 93 F.3d 155, 165 (5th Cir.1996)); *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 506 (3rd Cir.2010) ("[E]ither by direct communication or other appropriate means, the employee must make clear that [he/she] wants assistance *for his or her disability*") (alterations in original, internal quotations omitted) (emphases added); *Calero-Cerezo v. U.S. Dept. of Justice*, 355 F.3d 6, 23 (1st Cir.2004) ("The request for accommodation must be sufficiently direct and specific, giving notice that she needs a special accommodation.") (internal quotation omitted). Thus, except where the disability prevents the employee from making an accommodation request, it is the request that provides the employer's notice of the desire for accommodation.

In *Barnett*, the Ninth Circuit discussed the "triggering-duty" rule exception that, in limited circumstances, obligates an employer to initiate the interactive process without an employee's request for accommodation. 228 F.3d at 1109. After reviewing the legislative history of the ADA, the EEOC's enforcement guidelines, and case law from other circuits, the court concluded that in some circumstances the employer should initiate the interactive process without a request from the employee. 228 F.3d at 1112 (citing EEOC Guidelines, § 902, No. 915.002 at 5459). The court instructed that in the absence of a request for accommodation, the employer's duty to

54

accommodate arises "*only when* the employer: (1) knows that the employee has a disability, (2) knows, or has reason to know, that the employee is experiencing workplace problems because of the disability; *and* (3) *knows, or has reason to know, that the disability prevents the employee from requesting a reasonable accommodation*." *Id.* (emphasis added); *see also Zivkovic v. Southern Cal. Edison Co.*, 302 F.3d 1090, 1089 (9ᵗʰ Cir. 2002) (citing *Barnett* as holding that employer's ADA duty is triggered "once an employee requests accommodation *or an employer recognizes the employee needs an accommodation but the employee cannot request it because of a disability*") (emphasis added).

This exception is correctly stated in Ninth Circuit MJI No. 12.8, but not in the district court's instructions to the jury. ER 78. This court's modified "triggering-duty" instruction took language from *Barnett* out of context to create a different exception to the "triggering-duty" rule. The language used in the district court's instruction was taken from the beginning of the *Barnett* court's discussion of an employer's duty to engage in the ADA's "interactive process" explaining generally that "[t]he interactive process is triggered either by a request for accommodation by a disabled employee or by the employer's recognition of the need for such an accommodation." *Id.* Importantly, however, the *Barnett* court went on to instruct that "according to the EEOC," an employer's duty in the absence of an accommodation request, is triggered only if: "'(1) knows that the employee has a

disability, (2) knows, or has reason to know, that the employee is experiencing work place problems because of the disability, and (3) knows, or has reason to know, that the disability prevents the employee from requesting a reasonable accommodation.'" 228 F.3d at 1112 (quoting EEOC Guidelines § 902 at 5459).

Accordingly, the district court erred in failing to properly instruct that in the absence of a request for accommodation for a disability, no ADA duty is triggered unless the employer knew (or should have known) that plaintiff's disability was causing her workplace problems and her disability prevented her from making a request. ER 78. The omission of the properly stated exception to the "triggering-duty" rule, together with the court's erroneous instruction that the duty to accommodate can be triggered if the employer is aware that the Plaintiff is disabled and needs accommodation, misstated the law on an issue central to Liberty's defense.

### 2. The Facts Required a Proper Instruction on Plaintiff's Burden to Prove that the Duty to Accommodate was Triggered.

Ninth Circuit MJI No. 12.8 applied to the facts in this case and should have been given in its entirety. Plaintiff presented no evidence that she or anyone else on her behalf requested Liberty accommodate her disability. Tr. 615. The uncontroverted evidence was that Plaintiff did not request accommodation for her disability. Tr. 507; ER 176-77. The evidence was that after providing Liberty with her December, 2011 medical release, Plaintiff stopped communicating with anyone

at Liberty about her physical limitations and work restrictions, including the changes to her limitations noted in her January, 2012 PCE Report. Tr. 489-91, 537-38. Plaintiff's silence continued even when she learned she was declared permanently disabled and unable to return to regular work. Tr. 507, 538, 608-09. After receiving her WC Notice of Closure in March, 2012, Plaintiff chose to say and do nothing. She did not initiate any discussion about workplace accommodations nor otherwise notify Liberty that she wanted permanent accommodation. *Id.*

In fact, the evidence was that Plaintiff did not communicate a desire to continue working as a shipping clerk for Liberty despite her disability, until after Liberty had terminated Plaintiff's employment. ER 111; Tr. 624. Even then, Plaintiff did not request accommodation. *Id.* Additionally, it was not until after filing this lawsuit that Plaintiff began to engage in accommodation discussions and, for the first time, suggested an accommodation that she believed would enable her to perform the essential functions of her shipping clerk position. Dkt. 35 at ¶ 33.

### 3. The District Court Proceeded under the False Premise that WC "Accommodation" Triggers the ADA Duty to Provide Disability Accommodation.

Throughout this litigation, the district court made a fundamental analytical error which placed full responsibility upon Liberty to determine, in Plaintiff's silence, that she needed and wanted disability accommodation. This error was based on the flawed premise that "Defendant's duty to accommodate Plaintiff was triggered when

she provided medical documentation that specified Plaintiff would need work-related restrictions[.]" ER 16. In other words, the district court determined that Liberty's duty to provide ADA disability accommodation had been triggered by Plaintiff's communication—during and required by her WC claim—about her medical restrictions and need for light-duty "accommodation" while she was undergoing physical therapy to recover from her work injury. Medical documentation provided in the context of an open WC claim for a work *injur*y that is normally temporary and short-lived cannot be deemed sufficient notice of a need and desire for accommodation due to a *disability*. *See Wallace v. Heartland Community College,* 2014 U.S. Dist. WL 2809084 *5 (Peoria Division 2014) ("Plaintiff has been and continues to operate under a misunderstanding that apprising one's employer of one's disability and symptoms equates with informing the employer of the employee's desired accommodation. It does not. That is why an employer's knowledge of the disability is a distinct element of the failure-to-accommodate claim."), citing *Brumfield v. City of Chicago*, 735 F.3d 619, 631 (7th Cir.2013).

The Eighth Circuit's decision in *Mole v. Buckhorn Rubber Products, Inc.* 165 F.3d 1212, 1217-18 (1999) is on point. The facts in *Mole* were similar to the facts here in that the employer was aware of Mole's need for assistance due to her medical problems and the employer even helped her seek medical treatment, granted her leave of absences, and distributed some of her work to other employees. *Id.* at 1217.

Nonetheless, the court affirmed summary judgment in the employer's favor finding that Mole's case was problematic because "prior to receiving a notice of termination Mole never advised Buckhorn she needed additional accommodation, much less what accommodation specific to her position and workplace was needed." *Id.* The court further stated: "In general, it is the responsibility of the individual with the disability to inform the employer that an accommodation is needed." *Id.* (citing authority from other circuits). In rejecting the counter argument that the employer should have made an effort to determine if other accommodation might be needed, the Eighth Circuit stated: "Mole cannot 'expect the employer to read [her] mind and know [she] secretly wanted a particular accommodation and [then] sue the employer for not providing it.'" *Id.* at 1218 (brackets in original), quoting *Ferry v. Roosevelt Bank*, 883 F. Supp. 435, 441 (E.D.Mo.1995).

The district court's flawed presumption led to the erroneous conclusion that Liberty was sufficiently aware of Plaintiff's need and desire for *disability* accommodation such that the facts of the case did not warrant Liberty's requested "triggering-duty" instruction in the form of the Ninth Circuit MJI No. 12.8 nor in the form of Liberty's proposed modifications to the court's drafted "triggering-duty" instruction. ER 14-16. The record does not support the court's conclusion.

Liberty never ignored a request by Plaintiff for disability accommodation. Tr. 507, 538, 608-09. For whatever reason, Plaintiff chose to stop communicating with

Liberty about her physical condition by the end of 2011. Tr. 489-91. In the absence of a request for accommodation due to her disability, Liberty had no legal responsibility to inquire or insist that Plaintiff reveal why she made that choice. It was her responsibility to ask for help and she did not. Accordingly, Liberty cannot be liable under the ADA for failing to provide accommodation for Plaintiff's disability.

### 4. The Instruction Unfairly Prejudiced the Jury's Verdict in Plaintiff's Favor.

Prejudice is presumed when an erroneous jury instruction is given. *Hunter*, 652 F.3d at 1235. Additionally, there can be no question that prejudice resulted in failing to give Ninth Circuit MJI No.12.8 since the instruction the jury heard misstated the law regarding a central aspect of Liberty's defense and had the practical effect of withdrawing a foundational issue from the jury.

Had the legally correct instruction been given, the jury would have had the opportunity to consider whether Plaintiff satisfied an essential element of her claim -- specifically, that she requested a reasonable accommodation from Liberty due to her bilateral lateral epicondylitis disability or was excused from doing so because that disability prevented her from making a request. Had Ninth Circuit MJI No. 12.8 been given, based on the weight of the evidence, the only reasonable conclusion would have been that Plaintiff did not request accommodation from Liberty prior to the termination of her employment. This conclusion, coupled with the fact that

plaintiff neither argued nor presented any evidence that her disability prevented her from requesting accommodation, would have necessarily resulted in a defense verdict on plaintiff's disability discrimination claim.

## CONCLUSION

For all the above-stated reasons, the district court order denying Liberty's renewed JMOL should be reversed and judgment entered in Liberty's favor. Alternatively, the district court's instructional error requires rejection of the jury's tainted verdict and remand for a new trial on Plaintiff's FAC.

DATED this 23rd day of September, 2015.

HART WAGNER, LLP

By: *Ruth C. Rocker*
Ruth C. Rocker, OSB No. 944225
Janet M. Schroer, OSB No. 813645
Of Attorneys for Defendant-Appellant

## STATEMENT OF RELATED CASES

The County defendants know of no cases related to this appeal.

DATED the 23rd day of September 2015

HART WAGNER, LLP

By:  /s/ *Ruth C. Rocker*
Ruth C. Rocker, OSB No. 944225
Janet M. Schroer, OSB No. 813645
Of Attorneys for Defendant-Appellant

<u>CERTIFICATE OF COMPLIANCE</u>

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13,811 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated this 23rd day of September 2015.

HART WAGNER. LLP

By:    */s/ Ruth C. Rocker*
        Ruth C. Rocker, OSB No. 944225
        Janet M. Schroer, OSB No. 813645
        Of Attorneys for Defendant-Appellant

9th Circuit Case Number(s) | 15-35395

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | Sep 23, 2015 | .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | /s/ Ruth C. Rocker

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When Not All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | | .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format) |